IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

VICTOR CHARLES ZERBY,
    Plaintiff,

vs.                                          Case No. 3:09cv284/LC/MD

WALTER A. MCNEIL, et al.,
    Defendants.
_____

## REPORT AND RECOMMENDATION

This cause is before the court upon defendants McNeil and Kemps' motion to dismiss filed on December 30, 2009. (Doc. 28). These defendants seeks dismissal of plaintiff's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that the allegations of plaintiff's amended complaint fail to state a plausible claim for relief against them. Plaintiff has responded in opposition to dismissal. (Doc. 37). Upon review of the record, it is the opinion of the undersigned that the motion to dismiss should be granted.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is an inmate of the Florida penal system currently confined at Santa Rosa Correctional Institution ("Santa Rosa CI"). He commenced this action on July 2, 2009 by filing a civil rights complaint pursuant to 42 U.S.C. § 1983. (Doc. 1). An amended complaint was filed on September 4, 2009. (Doc. 8). The amended complaint names four defendants: Walter A. McNeil, Secretary of the Florida Department of Corrections ("FDOC"); Ms. Kemp, described as "Food Administrator" of the FDOC; Warden Ellis, Warden of Santa Rosa CI; and Ms. Smith, Kitchen

Supervisor of Santa Rosa CI. All defendants are sued in their individual and official capacities. (Doc. 8, p. 1). Plaintiff alleges that he arrived at Santa Rosa CI in August of 2007 weighing approximately 182 pounds, and that by July of 2009 when he filed his initial complaint he weighed only 164 pounds. (*Id.*, p. 8 ¶ 2). He attributes his weight loss to the defendants serving food that poses a health risk and portions that are inadequate.[1] Plaintiff alleges he has been sickened repeatedly by the rotten and contaminated food.[2] Defendant Smith has been the Kitchen Supervisor at all times relevant to plaintiff's complaint. Plaintiff has grieved the issue of unhealthy and rotten food on several occasions starting in September of 2007. (*Id.*, pp. 8-9). The grievances have included formal complaints to the Warden of Santa Rosa CI, and grievance appeals to the Secretary of the FDOC. Defendants Smith, Ellis and Kemp have denied plaintiff's grievances. (*Id.*, pp. 10-11 ¶ 12; *see also* Exs. A-C). Plaintiff also sought relief in state court by filing a lawsuit against the FDOC in December of 2007. (*Id.*, p. 5 and p. 9 ¶ 5). Although the food improved as a result of the lawsuit, the improvement lasted only 3 days. (*Id.*, pp. 9-10 ¶¶ 4, 5, 7). Plaintiff contends his prior grievances and lawsuit have made all of the defendants aware of the issue, but they have ignored the problem. (*Id.*, p. 11 ¶ 15). As recently as one month prior to the filing of his initial complaint, plaintiff was served "tainted" food. (*Id.*, p. 8 ¶ 5). Claiming violation of his Eighth Amendment rights, plaintiff seeks the following

---

[1]According to plaintiff, the potatoes are unpeeled and their skins are contaminated with rot, dirt and mold. They are black with rot, taste sour and have a foul odor. Although the FDOC has provided Santa Rosa CI with an automatic peeler, it is never used. (Doc. 8, p. 8 ¶ 20). Almost every vegetable is served dirty and rotten; meat is sour; chicken is not cooked properly. (*Id.*, p. 9 ¶ 6). Every day some and often the main portion of plaintiff's meal is rotten or otherwise unfit for consumption. That, coupled with small portion sizes, has diminished plaintiff's daily nutritional intake to the point where he has lost 20 lbs. (*Id.*, p. 8 ¶ 2 and p. 11 ¶ 13).

[2]Plaintiff alleges he has been sickened by the potatoes (stomach pains and diarrhea) several times and now refuses to eat them. (Doc. 8, p. 8 ¶ 2). On March 24, 2008, plaintiff ate meatloaf which caused him severe stomach pain and diarrhea. (*Id.*, p. 10 ¶ 8). On March 25, 2008 plaintiff and hundreds of other inmates were sickened with food poisoning due to defendant Smith's poor food preparation. (*Id*, p. 8 ¶ 4, p. 10 ¶ 8). On March 27, 2008, defendant Smith was informed that the meat in the stroganoff was sour, but ordered that it be served anyway. (*Id.*, p. 10 ¶ 9).

relief:

> Plaintiff seeks punitive damages for "pain and suffering" caused by defendants, in the amount allowable by law. Plaintiff seeks injunctive relief from being served food that pose's [sic] a threat to his health. Plaintiff seeks liens removed from his account for litigation. Plaintiff seeks an alternative food with equal nutritional value.

(*Id*.).

Defendants Kemp and McNeil, in their motion to dismiss, contend that plaintiff has failed to state a viable § 1983 claim against them in their individual capacities, because he is attempting to impose liability on the basis of *respondeat superior*. (Doc. 28). Defendant Kemp further argues that to the extent plaintiff seeks to impose liability against her in her capacity as Chief of Inmate Grievances for the FDOC (her true position), plaintiff fails to state a viable claim because the process of responding to inmate grievances does not give rise to a claim for relief. (*Id*.).

Plaintiff has responded in opposition to dismissal, asserting that defendants McNeil and Kemp are liable for the inadequate and unsafe food served by defendant Smith by virtue of their responsibility to provide adequate food to inmates. (Doc. 37). He further argues that these defendants were made aware of the inhumane conditions by virtue of plaintiff's grievances and state court lawsuit, and by the fact that the media publicized a March 25, 2008 outbreak of food poisoning at Santa Rosa CI. However, defendants have ignored the problem and allowed it to continue. (*Id*., p. 3).

## LEGAL STANDARDS

<u>Motion to Dismiss Standard</u>

On a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court accepts a complaint's well-pleaded allegations as true and evaluates all inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). There are a few exceptions to this rule, such as where the facts alleged are internally

inconsistent or where they run counter to facts of which the court can take judicial notice. 5B CHARLES A. WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2008). In addition, conclusory allegations, unwarranted deductions of fact and legal conclusions need not be accepted as true. *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (May 18, 2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Marsh v. Butler County*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) ("[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal."). The complaint may be dismissed under Rule 12(b)(6) if the facts as pleaded do not state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1968-69, 1974, 167 L.Ed.2d 929 (2007) (retiring the negatively-glossed "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim). A complaint is also subject to dismissal under Rule 12(b)(6) "when its allegations, on their face, show that an affirmative defense bars recovery on the claim." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003); *Marsh*, 268 F.3d at 1022.

**Eighth Amendment Standard**

Plaintiff's claim that the food served to inmates at Santa Rosa CI poses a health risk and is quantitatively inadequate arises under the Eighth Amendment's proscription on cruel and unusual punishment. Although the United States Constitution does not require comfortable prisons, it does not permit inhumane ones. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The Eighth Amendment governs "the treatment a prisoner receives in prison and the conditions under which he is confined. *Hellig v. McKinney,* 509 U.S. 25, 31, 113 S.Ct.

2475, 125 L.Ed.2d 22 (1993). However, "[n]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). After incarceration, only the 'unnecessary and wanton infliction of pain' . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment. *Ingraham v. Wright*, 430 U.S. 651, 670, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (citations omitted)). Claims challenging conditions of confinement under the Eighth Amendment must demonstrate an infliction of pain "without any penological purpose" or an "unquestioned and serious deprivation of basic human needs" such as medical care, exercise, food, warmth, clothing, shelter, or safety. *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981); *see also Hamm v. DeKalb County*, 774 F.2d 1567, 1571-72 (11th Cir. 1985).

The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the "minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 303, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). It is well-established that inmates must be provided nutritionally adequate food, "prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Shrader v. White*, 761 F.2d 975 (4th Cir. 1985) (quoting *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980); *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985). The food need not be "tasty or aesthetically pleasing" but merely "adequate to maintain health." *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996), *amended by* 135 F.3d 1318 (9th Cir. 1998); *Lunsford v. Bennett*, 17 F.3d 1574, 1580 (7th Cir. 1994); *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993); *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986) (*quoting Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977)); *Cunningham v. Jones*, 567 F.2d 653, 659-60 (6th Cir. 1977); see also *Hamm*, 774 at 1575 ("The Constitution requires that prisoners be provided "reasonably adequate food.").

*Case No: 3:00cv354*

To establish an Eighth Amendment claim, a plaintiff must demonstrate: a substantial risk of serious harm, defendant's deliberate indifference to that risk, and causation. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1583 (11th Cir. 1985)(citing *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. at 1974; *LeMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993)). There is both an objective and subjective component of a viable Eighth Amendment claim.

The first requirement, the objective component of Eighth Amendment analysis, requires:

> conduct by public officials "sufficiently serious" to constitute a cruel or unusual deprivation – one "denying 'the minimal civilized measure of life's necessities.'"

*Taylor v. v. Adams*, 221 F.3d 1254, 1257-58 (11th Cir. 2000) (citing *Wilson v. Seiter*, 501 U.S at 298, 111 S.Ct. at 2324 (quoting *Rhodes v. Chapman*, 452 U.S. at 347, 101 S.Ct. at 2399)).

The second requirement, the subjective component of Eighth Amendment analysis, requires "a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." *Taylor* at 1258 (citing *Wilson v. Seiter*, 501 U.S. at 300, 111 S.Ct. at 2325)("The source of the intent requirement is not the predilections of this Court, but in the Eighth Amendment itself, which bans only cruel and unusual *punishment*. If the pain inflicted is not formally meted out *as punishment* by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify." (emphasis in original)). "To show the required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference.'" *Taylor* at 1258 (quoting *Estelle*, 429 U.S. at 105, 97 S.Ct. at 291).

**Supervisory Liability Under § 1983**

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269

(11th Cir. 1999) (internal quotation marks and citation omitted); *Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Cottone,* 326 F.3d at 1360; *Harris v. Ostrout,* 65 F.3d 912, 917 (11th Cir. 1995). "The mere right to control, without any control or direction having been exercised and without any failure to supervise, is not sufficient to support 42 U.S.C. § 1983 liability." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 n. 58, 98 S.Ct. 2018, 2037 (1979). "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted). The Eleventh Circuit in *Douglas v. Yates*, 535 F.3d 1316 (11th Cir. 2008) set forth the limited circumstances in which a causal connection between the actions of a supervising official and the alleged constitutional deprivation can be shown sufficient to render him liable on a § 1983 claim. The causal connection can be established

> when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fails to do so; when the supervisor's improper custom or policy leads to deliberate indifference to constitutional rights; or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Id.* at 1322 (citing *West v. Tillman*, 496 F.3d 1321, 1328-29 (11th Cir. 2007)).

## DISCUSSION

In the instant case, plaintiff does not allege Secretary McNeil was personally involved in preparing or serving the food at Santa Rosa CI. Further, even construing the allegations of the amended complaint in a light most favorable to plaintiff, they fail to connect Secretary McNeil to the claimed constitutional violation. *See Pamel Corp. v. P.R. Highway Auth.*, 621 F.2d 33, 36 (1st Cir. 1980) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some

minimal particularity how overt acts of the defendant caused a legal wrong."); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1234, at 381-85 (3d ed. 2004) ("[A] complaint will be held defective . . . if [it] fails to connect the defendant with the alleged wrong.").

      Plaintiff attempts to hold Secretary McNeil liable by alleging that he (plaintiff) filed one or more grievance appeals with the Secretary's Office, but they were ignored or denied. Plaintiff has attached one such grievance appeal to his amended complaint. (Doc. 8, Ex. C). The grievance relates solely to the potatoes being cooked and served with their skins on, dirty and decayed. Even assuming, without deciding, that this sufficiently grieved the breadth of the issue plaintiff now presents to this court – that Ms. Smith continually prepares and provides food which she knows poses a health risk, is quantitatively inadequate and has an adverse affect on inmates' health – the mere existence of the grievance appeal is insufficient to create a causal connection between any act or failure by Secretary McNeil and the alleged deprivation of adequate food. There are no allegations that Secretary McNeil had actual notice of the grievance, and the grievance itself does not suggest that he did. Thus, the grievance is insufficient to establish that Secretary McNeil knew of, took part in, or approved the claimed constitutional deprivation.

      Nor does plaintiff's state court lawsuit demonstrate the required causal connection. Secretary McNeil was not a named defendant in plaintiff's state court lawsuit. The named defendants were the Department of Corrections and Santa Rosa Correctional Institution. (Doc. 8, p. 5 and p. 9 ¶ 5; *see also* https://www2.myfloridacounty.com/ccm/?county=66, Case No. 2007-CA-001184;[3] http://cweb.clerk.leon.fl.us/index.asp, Case No. 2008-CA-000053). Plaintiff admits that the only persons who were served with the lawsuit were the FDOC's General Counsel and the State of Florida Attorney General. (*Id.*, p. 9 ¶ 5; Doc. 37, p. 3 ¶ 5). He

---

[3]Plaintiff initially filed suit in Walton County Circuit Court Case Number 2007-CA-001184. The suit was transferred to Leon County Circuit Court, Case Number 2008-CA-00053. (Doc. 8, p. 5 and p. 9 ¶ 5).

*Case No: 3:00cv354*


identifies the issues raised in that lawsuit as "interference with grievance procedure, denial of medical care, poor unhealthy food practices," and states the lawsuit was dismissed for his failure to exhaust administrative remedies. (*Id.*, p. 5). Again, there are no allegations that Secretary McNeil had actual notice of the lawsuit or plaintiff's claims concerning the food. Plaintiff therefore cannot genuinely argue that Secretary McNeil was the proximate cause of the alleged constitutional violation.

Moreover, the single incident of institution-wide food poisoning at Santa Rosa CI on March 25, 2008, which gained media attention and resulted in a lock-down, does not establish a "widespread" or "obvious" history of unsafe and inadequate food at Santa Rosa CI sufficient to put Secretary McNeil on notice of Ms. Smith's alleged misconduct. *Hartley v. Parnell*, 193 F.3d at 1269 ("The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.") (internal quotation marks and citation omitted). Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." *Tittle v. Jefferson County Comm'n*, 10 F.3d 1535, 1542 (11th Cir. 1994). The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur. *See Harris v. City of Marion*, 79 F.3d 56, 58-59 (7th Cir. 1996). Assuming Secretary McNeil was aware of the incident of food poisoning, that is insufficient to establish a causal connection between Secretary McNeil and the alleged regular deprivation of adequate food plaintiff claims here.

For similar reasons, plaintiff's claims against Ms. Kemp require dismissal. Plaintiff does not allege Ms. Kemp was personally involved in preparing or serving the food at Santa Rosa CI. Her only involvement was responding to plaintiff's appeal to the Office of the Secretary. (Doc. 8, p. 8 ¶ 3; p. 10 ¶ 12; Ex. C). As the attachments to the amended complaint demonstrate, plaintiff's informal grievance (to Ms. Smith)

grieved the manner in which the potatoes were prepared – they were "dirty" and "unpeeled." Plaintiff requested that they be peeled. (Doc. 8, Ex. A). Ms. Smith responded: "By the knew [sic] recipes that the state has made the potatoes are not suppose [sic] to be pilled [sic]." (*Id*.). In plaintiff's appeal to the Office of the Secretary, he again took issue with the potatoes being served unpeeled and dirty. (*Id*., Ex. C). Ms. Kemp denied the appeal on April 16, 2009, responding: "Your request for administrative review has been received and referred to our food service administrator who provided the following information: The response you received at the institutional level has been reviewed and is found to appropriately address the concerns that you raised at the institutional level as well as the Central Office level." (*Id*.). Ms. Kemp's employment position is clearly identified on the response form as the "Secretary's Representative," not the food service administrator. (*Id*.). Ms. Kemp's role in the matter was confined to referring the grievance to the food service administrator for investigation, and relaying the administrator's determination to plaintiff. That is not enough to establish that Ms. Kemp caused the alleged deprivation of adequate food. *See Shehee v. Luttrell* 199 F.3d 295, 300 (6th Cir. 1999) (finding that prison officials who were not involved in an inmate's termination from his commissary job, and whose only roles involved the denial of administrative grievances or the failure to act, were not liable under § 1983 on the theory that the failure to act constituted an acquiescence in the unconstitutional conduct), *cert. denied*, 530 U.S. 1264, 120 S.Ct. 2724, 147 L.Ed.2d 988 (2000); *Weaver v. Toombs*, 756 F.Supp. 335, 337 (W.D. Mich. 1989) (holding that prisoner failed to state a § 1983 claim against supervisory officials, where prisoner merely alleged the officials denied his grievance and did not allege they were personally involved in the alleged misconduct), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) ("At a minimum, a 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the

unconstitutional conduct.").[4]

Even without regard to causation, plaintiff's Eighth Amendment claim against Ms. Kemp still fails because his allegations fail to show that her response (referring the matter to the food service administrator and relying on his or her determination) was objectively unreasonable. *Cf. Acosta v. Watts*, 281 Fed. Appx. 906, 908-09 (11th Cir. 2008) (affirming dismissal of deliberate indifference claim against administrator of grievance appeals for denying plaintiff's appeal, where administrator's decision was based upon medical professional's opinion that surgery was not necessary).

Accordingly, it is respectfully RECOMMENDED:

1. That defendants McNeil and Kemp's motion to dismiss (doc. 28) be GRANTED and plaintiff's claims against them be DISMISSED WITH PREJUDICE under 28 U.S.C. § 1915(e)(2)(B)(ii).

2. That this case be referred to the undersigned for further proceedings against the remaining defendants.

At Pensacola, Florida, this 14th day of May, 2010.

/s/ *Miles Davis*
MILES DAVIS
UNITED STATES MAGISTRATE JUDGE


### NOTICE TO PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>. A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636;** ***United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**

---

[4]There is nothing inherently unsanitary about serving potatoes with their skins intact; therefore, the FDOC policy of not peeling potatoes, in and of itself, cannot be said to have led to deliberate indifference to plaintiff's constitutional rights.

*Case No: 3:00cv354*